## THORNTON B. RENNELL *vs.* EDMUND KIMBALL.

The purchaser of a share in a ship, which has been chartered for a voyage, is not liable, in the absence of a special agreement, to be charged, in the ship's account with him, for any portion of the commission paid to a broker for effecting the charter.

If a purchase of a share in a ship is made by taking a bill of sale, absolute in its terms, and expressing a present sale, parol evidence is incompetent to show an agreement between the parties that the title should not vest in the purchaser until the completion of repairs which were then making upon her; but, as between the parties, and in defence to a claim by the vendor of an allowance for expenses of repairs, parol evidence is competent to show an agreement by him to pay the expenses himself.

No exception lies, on the ground of inconsistency, to a master's report, which finds an agreement between the vendor and purchaser of a share in a ship that the title should not vest in the purchaser until the completion of repairs which were then making upon her, and an agreement by the vendor to pay the expenses of the repairs.

In determining the question whether, upon the sale of a "master's interest," or one twelfth part, in a ship, the vendor agreed to pay the expenses of extensive repairs which were then making upon her, if the direct evidence is conflicting, it is important and material for a master, to whom the case has been referred, to decide as to the progress which had then been made in the repairs; and an exception lies to his report which states that this point was not material. But evidence is incompetent to show that it is very unusual for a master to purchase a "master's interest" in a vessel undergoing repairs.

Under a charter-party of a ship for a voyage "from New York to Melbourne, Australia, thence to Manilla, and back to Boston; or from Melbourne to Calcutta and back to Boston," "including the cabin for passengers, for the outward voyage only," the outward voyage terminates at Melbourne; and, in the absence of a special agreement to the contrary, the master will be held to account to the owners for a reasonable sum for the passage money of passengers carried by him after leaving that place.

A part owner of a ship, who is also her master, is liable for his share of a reasonable commission charged by the agent of the owners upon a payment to him on account of his salary, in a foreign port, and also for his share of a reasonable commission charged by the ship's husband and managing owner for purchasing the outfits and paying the bills.

Although it may in general be usual and proper for the master of a ship to charge in his accounts for riding expenses at Calcutta, yet if the managing owner, in his letter of instructions, which the master received and acquiesced in, has stated, "I do not expect to pay any riding bills, and hope you will live on board the ship," the master will not be entitled to charge for such expenses.

No exception lies to the report of a master, to whom a suit in equity has been referred, for reasons not appearing on the report itself.

A ship's husband is entitled to charge interest on the excess of his disbursements over the amounts received by him, from the time of the occurrence of such excess.

The pendency of a trustee process, attaching the funds of a plaintiff in equity in the hands of the defendant, will not prevent the acceptance of the report of a master, to whom the case had been referred, although it may delay the entry of a final decree.

Interest will not be allowed, during the pendency of a trustee process, on a debt upon which no interest is due except as damages.

BILL IN EQUITY alleging that on the 6th of October 1856 the defendant, being then the sole owner of the ship Anna Kimball,

sold to the plaintiff, who was a master mariner, one twelfth part of her for $4000; that the ship was then undergoing repairs, and that it was agreed that the title should not vest in the plaintiff until their completion, and that the defendant also made a further and independent agreement that he would pay the expenses thereof; that the defendant was the managing owner, and since the plaintiff's purchase the ship has performed two voyages, in the first of which, from New York to Melbourne, Australia, thence to Calcutta and back to Boston, under a charter for $35,750, the plaintiff acted as her master, under an agreement that he should receive for his services five per cent. of her gross earnings; that the defendant agreed to keep the plaintiff's interest insured; that the defendant has received her earnings, and large sums for insurance, and refused to render an account to the plaintiff, or to pay to him the sum to which he is entitled.

The answer denied the making of the agreement for a delay in the vesting of the title to the plaintiff's share, or as to the repairs, and alleged that the plaintiff was responsible for his portion of the expenses of the repairs; denied that he faithfully performed the duties of master; alleged that he withheld moneys received by him on the ship's account and was still largely indebted to the ship; denied that the defendant agreed to keep the plaintiff's interest insured, or that he has ever refused to render an account; and alleged that a portion of the charter money was still in litigation, and that various trustee suits had been brought, and were still pending, attaching any funds of the plaintiff which might be in the defendant's hands. And the defendant annexed to his answer, 1. The account of the ship with the plaintiff as master; 2. The account of the ship with the plaintiff as part owner, during the time that he acted as master; 3. The account of the ship with the plaintiff as part owner, since he ceased to act as master.

The case was referred to a master, from whose report it appeared that on the 6th of October 1856, while the ship was undergoing repairs, the parties entered into the following agreement:

" It is agreed between Edmund Kimball, Esq., owner of the ship Anna Kimball, and Thornton B. Rennell, that, for the sum of four thousand dollars, one twelfth of the said ship Anna Kimball will be and is sold to Thornton B. Rennell, who is to command her ; and it is further agreed that the pay of the said master, Thornton B. Rennell, is to be five per cent. on the gross earnings of the ship, and that his boarding expenses, while in port, will be paid by the owners of the ship. It is understood by the parties, that if any charges, any commissions, on this sale Capt. Rennell is to pay the same."

On the same day, a bill of sale of one twelfth of the ship was executed in the usual form. There was a conflict in the evidence as to the progress which had then been made in the repairs ; but the master reported that the point was not material.

There was also a direct conflict in the evidence whether the parties agreed that the title should not vest in the plaintiff until the completion of the repairs, and whether the defendant promised to pay the expenses thereof. In reference to this, however, evidence was introduced of the value of the ship, and the amount of insurance obtained upon her ; and one witness, who had been a ship broker for thirty years, testified that it was very unusual for a master to buy a " master's interest " in a vessel undergoing repairs, and that it would be an unheard of case to sell such an interest to a master, and he to pay his contributory share of the expenses of the repairs. Upon this point, there was evidence contradicting the above. Upon the whole evidence, the master reported that he found that the agreements set forth in the bill were proved ; and he also reported the amount paid for repairs, and that paid for outfits.

The defendant made all the purchases for the ship, and paid the bills ; and the master allowed to him his charge of two and one half per cent. as commission thereon.

On the 4th of July 1856, the defendant chartered the ship to G. T. and W. P. Lyman, " for a voyage from New York to Melbourne, Australia, thence to Manilla, and back to Boston ; or, from Melbourne to Calcutta, and back to Boston," " including the cabin for passengers, for the outward voyage only, except

the necessary room for the captain and officers of the ship, for $35,750, provided she went to Calcutta." For effecting this charter, the defendant paid to a broker $893.75, and charged the plaintiff with his proportion thereof, which the master allowed.

The ship proceeded upon her voyage from New York to Melbourne, thence to Calcutta, and back to Boston; but only $22,400 of the charter money was paid, the rest being in litigation, under circumstances reported in detail by the master, who found, from the facts disclosed, that, whatever might be the result of the litigation, the defendant must be held to have insured to the plaintiff his share of the whole amount.

Upon conflicting evidence, which was reported in detail, the master found that the defendant insured the plaintiff's interest in the ship, and was therefore liable to account to him for his share of certain sums received from the insurers.

It appeared that the plaintiff's wife accompanied him upon the voyage, and that a Mr. Burns went as passenger from New York to Port Louis, and a Mr. Rollins from Calcutta to Boston. The master reported that by the " outward voyage " he understood the voyage from New York to Calcutta; and, no special agreement being proved as to the plaintiff's right to take his wife without charge, the master reported a sum which he considered proper for the plaintiff to be charged for her passage, and likewise for that of the other passengers, after leaving Calcutta.

The plaintiff received $675 at Melbourne on account of his services. The agents who paid it charged a commission of two and one half per cent., and the defendant was allowed to include this in the ship's account with the plaintiff.

The ship was at Calcutta during a portion of the months of July and August. There was evidence that it is reasonable and necessary at that season to hire conveyances there, and that, in the absence of a special agreement to the contrary, it is usual to charge the expenses to the ship. But the defendant's letter of instructions to the plaintiff, the receipt of which was acknowledged, without dissent, contained this sentence : " I do not expect to pay any riding bills, and hope you will live on board the

ship." The master reported that under this letter of instructions the plaintiff could not be allowed to charge the riding expenses against the ship.

Several trustee suits were brought against the plaintiff, in which the defendant was summoned as trustee. These suits were pending at the time of the hearing before the master.

Upon the question of interest, the master found that interest should be charged by the defendant only on the balance due, after an account stated, and beginning to run after a demand and a refusal or neglect to account; and he stated accounts casting the interest accordingly, showing a balance due to the plaintiff, on his account as master, of $175.44; and on his account as part owner, of $1470.33.

Both the defendant and the plaintiff alleged various exceptions to the master's report, of which so much as is material is copied in the margin.*

---

* *Defendant's Exceptions.*   " 1. For that the said master, in his said report, does not find what progress was made in repairing the Anna Kimball, October 6, 1856, certifying that this is not material; whereas the master should have found on this point, as such finding would be material for other purposes, and for showing how far the plaintiff could have examined the vessel at the time of the purchase; and also, if it should be decided that plaintiff is liable for repairs from the date of his purchase, October 6, 1856, for showing what the amount of his liability would be.

" 2. For that the master admitted oral testimony to prove that there was an agreement between the plaintiff and defendant, that the right of property should not vest until the vessel was repaired and put in seaworthy condition; whereas he should not have admitted such testimony for such purpose, as it went to vary and control the express written contract between the parties, of October 6, 1856.

" 3. For that the master finds and reports that there was also a further and independent agreement that the defendant should pay for the repairs which were to be put upon the vessel; whereas the master ought not to have so found and reported, but ought to have found and reported all the facts and testimony on this point, and left it for the court to say whether, on the facts and testimony, an independent agreement had been proved by the plaintiff.

" 4. For that the master, even if he rightly admitted oral testimony on the point, finds and reports that upon the above facts and testimony, as stated in his report, the two agreements mentioned in the 2d and 3d of the above exceptions were proved by the plaintiff; whereas he ought to have found they were not either the

*T. L. Wakefield,* for the plaintiff.

*H. A. Johnson,* for the defendant.

HOAR, J. Both parties have alleged exceptions to the master's report, and it becomes necessary to consider them in succession.

one or the other of said agreements so proved; for, (1st.) said facts and testimony, as reported, are wholly inadequate and insufficient, taken separately or together, to prove that said agreements, or either of them, were ever made; and, (2d.) both said agreements, if made, must have been made subsequently to October 6, 1856; and said facts and testimony, as reported, show no consideration from the plaintiff to the defendant for such agreements, or either of them.

" 5. For that the master, even if he rightly admitted oral testimony on the point, finds and reports both of said agreements proved; whereas he ought to have found that, at the most, only one of the agreements was proved; for said agreements show, from their terms and nature, that, if one were made, it is absurd to suppose the other would have been made.

" 6. For that the master finds that the plaintiff must be charged with one twelfth of the outfits alone on the first voyage; whereas he ought to have found, for reasons above specified, among others, that the plaintiff was to be charged with one twelfth of the repairs and outfits, the plaintiff having purchased the vessel as she was, October 6, 1856, and the repairs having been put on the vessel subsequently to that date.

" 7. For that the master finds that the plaintiff must be debited with two and one half per cent. commission on his proportion of the outfits only; whereas, for the same reason as stated in the 6th exception, and also for the reasons stated in the report, he ought to have found that the plaintiff must be debited with that percentage on one twelfth of the outfits and repairs."

[The eighth, ninth, tenth, eleventh and twelfth exceptions were to the report of the master in relation to the circumstances under which he found that the defendant must be held to have insured to the plaintiff his share of the whole of the charter money, for reasons not appearing in the report itself, but which the respondent furnished affidavits to verify. The opinion of the court makes a full recital of these exceptions unnecessary. The thirteenth and fourteenth exceptions related to the sufficiency of the evidence to prove that the defendant insured the plaintiff's interest, and involved only a question of fact. The fifteenth, sixteenth, seventeenth and eighteenth exceptions related to the report by the master of the sum allowed by him for passage money of the plaintiff's wife and the other passengers.]

" 19. For that the master, in his report, refuses to allow to the defendant interest on the separate items of the debit side of the account from the time payment was made or the expense incurred; whereas he ought to have allowed this; for a ship's husband, disbursing moneys on account of the ship in different sums and at different times, is not obliged to wait for his interest to begin till he

The first exception taken by the plaintiff was waived at the argument; and none ·of the remainder seem to us to be well founded, except the third, and so much of the ninth, which is a general exception, as depends upon the decision of the third.

---

can state an account and make a demand on the part owners. Ships' husbands' accounts are always accounts current, with an interest account incorporated.

" 20. For that the master finds and reports anything due from the defendant the plaintiff on this bill; whereas he ought to have found that nothing was due; for, as is stated in the report, the several trustee suits are all still pending, wherein all funds, if any, of the plaintiff in the hands of the defendant, are attached to respond to the claims in those suits against the plaintiff; and no judgment can be rendered for the plaintiff in this action till the above suits are disposed of.

" 21. For that the master finds and reports any interest due from the defendant to the plaintiff; whereas, if he rightly found any balance due from the defendant to the plaintiff in this suit, he ought not to have found any interest due on such balance; for such balance, if any, was due at least before the service of the last trustee process, mentioned in the report; and interest could not run on any balance of the plaintiff's funds in the hands of the defendant which had been attached on trustee process, and where the process was still pending.

" 22. For that the master, in and by his report and the schedules annexed, has found and reported certain amounts due from the defendant to the plaintiff, and interest thereon ; whereas, for the reasons stated in the above exceptions, among others, and in accordance with such exceptions, he ought to have found nothing due from the defendant to the plaintiff, but that the balance of account was in favor of the defendant."

*Plaintiff's Exceptions.* [The first exception was waived at the argument.]

" 2. For that the said master, in and by his report, hath certified that he hath allowed the defendant to charge the vessel with a commission of two and one half per cent. on the amount of the outfits in New York; whereas the master should have found that the defendant, having rendered no account of this voyage prior to the bringing of this suit, was not entitled to any commission.

" 3. For that the said master, in and by his report, hath certified that he has charged the ship with the broker's commission for effecting the charter of the ship ; whereas the master should have certified that such a charge should not have been made, because it was a debt which accrued before·the plaintiff became an owner in said vessel.

" 4. For that the said master, in and by his said report, hath charged the plaintiff with the amount of the passage of the plaintiff's wife from Calcutta to Boston; whereas the plaintiff submits no such charge shou.d have been allowed."

[The fifth and sixth exceptions related to the passage money of the other passengers.]

'· 7. For that the said master, in and by his report, hath charged the plaintiff

The third exception is to the allowance of a charge against the ship of a broker's commissions for effecting the charter. This was a charge incurred before the plaintiff purchased his interest in the vessel. The charter was a subsisting contract at that time, and affected the price which he would pay for his share. His purchase was made subject to the charter; and he had nothing to do with any expense before the date of it, unless by special agreement. This exception is therefore sustained, and the item in the account to which it refers must be disallowed.

We come next to the exceptions of the defendant, which are twenty-two in number. The first five are closely connected, and may be considered together.

The plaintiff purchased one twelfth of the vessel under a written contract, dated October 6, 1856, and a bill of sale of the same date. She was at that time undergoing repairs, which were completed after the purchase, and proved to be of an expensive character. The defendant contended that these should be charged to the plaintiff in proportion to his interest; but the plaintiff introduced parol evidence to show an agreement, 1. That the title to the vessel should not vest in him until the repairs were completed; and 2. That the defendant should pay for the repairs that were to be put upon the vessel. The second

---

with the amount paid for buggy hire at Calcutta; whereas the said master should have found that the buggy hire, being necessary and for the benefit of the ship, should have been charged to the ship's account, and not to the personal account of the plaintiff; and secondly, that the letter of instructions, so called, and the acknowledgment of the receipt of the same, did not constitute, in law, a contract by which the plaintiff was bound to perform this service, for the benefit of the ship, at his own expense.

" 8. For that the said master, in and by his said report, hath charged the plaintiff with the amount of sixteen dollars and eighty-seven cents, being commissions on the amount paid the plaintiff at Melbourne; whereas no such charge should have been allowed.

" 9. For that the said master, in and by his said report and the schedules annexed, has certified the amounts due to the plaintiff; whereas said sums should have been larger, by the sums and amounts which the said master allowed the defendant to charge the plaintiff with, above excepted to."

exception is to the admission of testimony to prove the former of these agreements; and it seems to us well taken. It was an agreement inconsistent with the written contract of the parties; and to give it effect would be to allow a written contract to be varied and controlled by parol evidence. But the finding on the other agreement makes this exception immaterial. The third exception is to the master's finding " an independent agreement that the defendant should pay for repairs to be put upon the vessel." We can see no valid objection in law to this finding, if made upon sufficient evidence; and the master was not obliged to report the evidence. Indeed, whether it was an " independent " agreement was not important. It does not vary the written contract. That was for the sale of the vessel, and was completely executed. If the agreement to make the repairs was in consideration of the purchase, or was merely voluntary and without consideration, it is not now to be drawn in question, because it has been completely performed. The defendant is not sued upon it; and the question is not whether it can be enforced. The only question seems to be, whether one who has rendered service or delivered property to another on the express statement that no charge would be made for it, can afterward claim compensation. If the defendant promised to make the repairs at his own expense exclusively, whether he was moved to do so by a desire to make a sale of the vessel, or was content to do it from a sense of having made a profitable bargain, is of no consequence, if he has made them. He cannot claim of the plaintiff payment under an implied contract, as for a purchase, when the plaintiff was assured that it was a gift. The third exception is therefore not sustained.

The fifth exception is that these two agreements found by the master were contradictory, and could not exist together. We do not perceive the force of the objection. If the title was not to vest in the purchaser till the repairs were completed, an agreement that the vendor should pay for the repairs would seem not only to be consistent with such an arrangement, but to result from it.

The first and fourth exceptions relate to the evidence upon

which the master found the agreements above stated. The direct evidence in relation to them was contradictory. The plaintiff, and a witness who seems to have been nearly identical with him in feeling and interest, testified that the agreements were made; the defendant and his son testified that they were not. To determine which of these witnesses were entitled to credit, the master resorted to evidence of the facts and circumstances attending the transaction, in order to ascertain which of the conflicting statements was, on the whole, most reasonable and probable; and he has reported the evidence which was allowed under this head, and his conclusion upon it. Whether the evidence would fully justify his conclusion we do not determine, because the first exception seems to us well taken; and this decision necessarily requires the fourth also to be sustained. But in recommitting the report for revision on this point, we think it proper to remark that the admission of the testimony as to a usage or custom in the purchase of "masters' interests" in vessels was incorrect, and a finding based in any degree upon it would be erroneous. The evidence did not tend to prove any custom valid in law. But the actual value of the vessel at the time of the purchase, and the opportunities of the purchaser to examine her, may have had some legitimate bearing. *Bradbury* v. *Dwight*, 3 Met. 31. The object of that evidence was to show that the plaintiff would not have been likely to give so high a price as he did, unless the vessel were to be put in good repair without expense to him. But in deciding what weight is to be given to this argument, we are of opinion that the evidence which the master rejected as immaterial, and the rejection of which forms the ground of the first exception, was material and important. Whether the progress made in repairing her was such as to indicate the nature and extent of the repairs which would be required; whether her apparent condition was such as her actual condition ultimately proved to be; would certainly be elements influential upon the mind of a purchaser, and affecting the probability of his making the completion of the repairs a condition of his purchase. We think evidence upon this point should have been admitted and regarded. The first

31 *

exception is therefore sustained; and with it the fourth, in order that the evidence before disregarded may be considered by the master in connection with that upon which his opinion was formed.

It follows from the same premises that the sixth exception must be sustained, so far as to recommit the report to the master to revise his finding upon the charge of one twelfth of the repairs made subsequently to October 6, 1856. The same reason applies to the seventh exception.

The eighth, ninth, tenth, eleventh and twelfth exceptions are not properly before us as exceptions to the report of the master; but the facts stated in them might have formed the basis of a motion for a direction to the master to hear further evidence, or to state in his report the facts which the defendant seeks to show by affidavits. The right to a hearing upon these facts, upon any form of application suitably presented, was reserved by the judge who heard and reported the cause to the full court; and as the report is to be returned to the master for some purposes, the defendant may have leave to apply to the master for such further action upon the subject of these exceptions as he may think proper.

The thirteenth and fourteenth exceptions are sustained, for the reason that the court regard the evidence reported insufficient to sustain the master's finding that the plaintiff effected an insurance of the plaintiff's interest in the vessel; and the account is to be corrected in accordance with this opinion.

The fifteenth, sixteenth and seventeenth exceptions are sustained, because the outward voyage terminated at Melbourne. And the report is to be recommitted to the master to add a proper credit to the defendant for the passage money of the passengers from Melbourne to Calcutta.

The eighteenth exception does not seem to be well founded in fact, and is unimportant in view of the results to which we have come on the other points in the cause.

The nineteenth exception is sustained; and the report is to be recommitted to the master to state an interest account on the defendant's disbursements. This will of course require the

allowance of interest only so long as the receipts do not equal the disbursements, and upon the excess merely ; and the parties will consider whether the difference in the result is likely to justify the expense of the investigation.

The twentieth exception would not prevent the acceptance of the master's report, although it might delay the entry of a final decree. But we understand from the parties that it has become of no importance by the discontinuance of the trustee suits.

The twenty-first exception is sustained. Interest is not to be allowed during the pendency of a trustee suit upon a debt upon which no interest is due except as damages. *Adams* v. *Cordis,* 8 Pick. 269.

The twenty-second exception, which is a general one, is sustained so far as it is involved in the decision of the preceding exceptions.